## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

THE CINCINNATI INDEMNITY COMPANY,

          Plaintiff,

vs.                                     Case No.

HOME DEPOT U.S.A., INC.
and
LUTZ ROOFING SOUTH, INC.
and
ALEXANDER CONSTRUCTION
and
MICHELLE LEITNER
and
MOHAMED OTHMAN
and
ANDREW ("ANDY") CLOSE,

          Defendants.

## COMPLAINT FOR DECLARATORY JUDGMENT

Pursuant to 28 U.S.C. 2201 and Fed. R. Civ. P. 57, Plaintiff The Cincinnati Indemnity Company ("Cincinnati") states the following for its Complaint for Declaratory Judgment ("Complaint") against Defendants Home Depot U.S.A., Inc., Lutz Roofing South, Inc., Alexander Construction, Michelle Leitner, Mohamed Othman, and Andrew ("Andy") Close:

## PARTIES, JURISDICTION AND VENUE

1. Cincinnati is an insurance company incorporated under the laws of the State of Ohio with its principal place of business in Cincinnati, Ohio.

2. Home Depot U.S.A., Inc. ("Home Depot U.S.A.") is a Delaware corporation with a principal office located at 2455 Paces Ferry Road SE, Atlanta, Georgia 30339-6444.

3. Lutz Roofing South, Inc. ("Lutz") is a Florida corporation with a principal office located at 1180 Gulf Boulevard, Apartment 802, Clearwater Beach, Florida 33767-2761, registered

as a foreign corporation in the State of Missouri whose Registered Agent is Business Filings International, Inc., 120 South Central Avenue, Clayton, Missouri 63105.

4.      Upon information and belief, Joe Alexander is an individual d/b/a Alexander Construction ("Alexander") who is a resident of Colbert County, Alabama.

5.      Upon information and belief, Michelle Leitner ("Leitner") and Mohamed Othman ("Othman") are a married couple who are residents of Jefferson County, Missouri.

6.      Upon information and belief, Andrew ("Andy") Close ("Close") is an individual who is a resident of Jefferson County, Missouri.

7.      Cincinnati is an Ohio resident for purposes of diversity of citizenship jurisdiction.

8.      Home Depot U.S.A., Inc. is a Georgia resident for purposes of diversity of citizenship jurisdiction.

9.      Lutz is a Florida resident for purposes of diversity of citizenship jurisdiction.

10.     Alexander is an Alabama resident for purposes of diversity of citizenship jurisdiction.

11.     Defendants Leitner, Othman, and Close are Missouri residents for purposes of diversity of citizenship jurisdiction.

12.     This Complaint is filed pursuant to Fed. R. Civ. P. 57 and the Federal Declaratory Judgment Act, codified at 28 U.S.C. § 2201 and 2202, to obtain a declaration of the parties' rights and/or obligation under certain policies of insurance issued by Cincinnati to Tradesmithe, Inc.

13.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. 1332(a) because it is a civil action between citizens and residents of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14.     Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the United State District Court for the Eastern District of Missouri because a substantial part of the events giving rise to this action took place in the Eastern District of Missouri, and because one or more Defendants reside in the Eastern District of Missouri.

## FACTS COMMON TO ALL COUNTS

*The Maintenance Services Agreement*

15.     On or about November 19, 2015, Home Depot Store Support, LLC, a Delaware limited liability company, on behalf of itself and its affiliates, entered into a Maintenance Services Agreement with Tradesmithe, Inc., an Illinois corporation (the "MSA").

16.     A true, correct, and genuine copy of the MSA is attached as *Exhibit 1*.

17.     Home Depot Store Support, LLC was subsequently renamed Home Depot Support, LLC.

18.     The MSA provides that it shall continue until terminated by either party pursuant to the "Termination" provisions of the MSA.

19.     Section 6.1 of the MSA provides, in pertinent part:

To the maximum extent allowed by law, Vendor and any affiliate of Vendor that, directly or indirectly, controls Vendor (including their respective directors, officers, employees and agents) (collectively, "**Indemnitor**") shall indemnify, defend, and hold harmless Home Depot and its directors, officers, employees and agents (the "**Indemnitees**") from and against any and all claims or allegations (including those made by Vendor's directors, officers and Staff), s[sic], losses, damages, suits, fees, judgments, costs, expenses, product recalls, and civil penalties for actions, liabilities and damages (collectively, "Claims"), including reasonable attorneys' fees, court costs and other expenses incurred in responding to such Claims that the Indemnitees may suffer or incur arising out of or related to (a) the death of or injury to any person (including any employee or agent of Vendor)…except to the extent such any portion of any claim is directly and solely caused by the negligence or willful misconduct of the Indemnitees….

20.     Section 7.0 of the MSA provides:

**HOME DEPOT AFFILIATES**. All rights and obligations granted under this Agreement to Home Depot will extend to Home Depot's affiliates, which currently exist or are later acquired that: (a) control; (b) are controlled by; or (c) are under common control with Home Depot ("Affiliates"). An entity will be deemed to control another entity if it has the power to direct or cause the direction of the management or policies of such entity, whether through the ownership or voting securities, by contract, or otherwise.

21.     Home Depot Store Support, LLC is an Affiliate of Home Depot U.S.A.

22.     The rights and obligations under the MSA extend to Home Depot U.S.A.

23.     In June 2019, Lutz contracted with Home Depot U.S.A. to apply new roofing material at Home Depot Store #3032, 1131 West Gannon Drive, Festus, Missouri 63028 (the "Store").

*The Roofing Project*

24.     On or about June 14, 2019, Lutz solicited a quote from Tradesmithe, Inc. ("Tradesmithe") to power wash the roof for roof coating, and prep and paint gas lines and roof hatches with two coats of paint.

25.     A true, correct, and genuine copy of the June 14, 2019 quote is attached as ***Exhibit 2***.

26.     Lutz accepted Tradesmithe's quote and, on or about June 17, 2019, issued a purchase order for the scope of work identified in the quote (the "P.O.").

27.     A true, correct, and genuine copy of the P.O. is attached as ***Exhibit 3***.

28.     Lutz and Tradesmithe executed the P.O. on June 17, 2019.

29.     The P.O. contains the following indemnification language:

To the fullest extent permitted by law, [Tradesmithe] hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature (including death) to all persons, whether employees of the subcontractor or otherwise, and to all property caused by, resulting from, arising out of or occurring in connection with its execution of the Work (subcontract); and if any claims for

4

such damage or injury (including death) be made to asserted, the subcontractor agrees to indemnify and save harmless Lutz Roofing South Inc, owner and others required in the contract documents, their subsidiaries, officers, agents, servants and employees (hereinafter referred to collectively as "indemnitees") from and against any and all such claims, and further from and against any and all loss, cost, expense, liability, damage or injury, including legal fees and disbursements, that indemnitees may directly or indirectly sustain, suffer or incur as a result thereof and the subcontractor, upon demand, agrees to and does hereby assume, on behalf of indemnitees, the defense of any action which may be brought against indemnitees upon or by reason of such claims and to pay on behalf of indemnitees upon their demand, the amount of any settlement and/or judgment that may be entered against indemnitees in any such action.

30.     Tradesmithe subcontracted the power washing to Alexander.

**The Lawsuit**

31.     On September 29, 2022, Leitner and Othman filed a Petition in the Circuit Court of Jefferson County, Missouri, *Michelle Leitner and Mohamed Othman v. Home Depot U.S.A., Inc. and Andrew ("Andy") J. Close, and John Doe, #1 through #4*, Case No. 22JE-CC00794 (the "Underlying Lawsuit").

32.     A true, correct, and genuine copy of the Petition filed in the Underlying Lawsuit is attached as ***Exhibit 4***.

33.     The Petition in the Underlying Lawsuit asserts three (3) counts: Count I – negligence against Close and John Doe #1 through #4 (the "Does"); Count II – vicarious liability against Home Depot; Count III – Othman's claim for loss of consortium.

34.     The Petition in the Underlying Lawsuit alleges that, in mid-June 2019, Home Depot U.S.A. contracted with a third party to power wash the roof of the Store and that the power washing caused the roof of the Store to leak.

35.     The Petition in the Underlying Lawsuit alleges that, on or about June 20, 2019, at or around 12:00 p.m., Leitner slipped-and-fell on water and/or another liquid substance on the floor of the Store.

36.     The Petition in the Underlying Lawsuit alleges  that Home Depot U.S.A., Close, and John Does #1 through #4 (the "Does"), knew, or by using ordinary care could have known of the condition of the Store at the time of Leitner's alleged slip-and-fall.

37.     The Petition in the Underlying Lawsuit alleges that Home Depot U.S.A., Close, and John Does #1 through #4 (the "Does") failed to use ordinary care to remove or warn of the dangerous condition of the Store at the time of the alleged slip-and-fall.

38.     The Petition in the Underlying Lawsuit alleges that Leitner sustained serious, permanent, and disabling injuries, that Leitner suffers and will continue to suffer severe pain in body and mind; that Leitner's injuries and defects are serious and permanent and progressive in nature; and that the nature and use of all of Leitner's injured body parts and organs are severely injured and painful.

39.     The Petition in the Underlying Lawsuit alleges that Leitner has incurred medical expenses totaling $51,059.95, has been caused to undergo medical treatment, is currently undergoing medical treatment, and, in the future, will be caused to undergo medical treatment in an amount presently undetermined.

40.     In the Petition in the Underlying Lawsuit, Leitner seeks judgment against Home Depot U.S.A., Close, and the Does in an amount in excess of $5,000.00 but less than $25,000.00, that will fairly and reasonably compensate her for her injuries, for losses she will sustain in the future, for past and future medical bills, for past and future pain and suffering and restricted body movement, for her costs, and for any other relief the Court deems just and equitable.

41.     On November 22, 2022, Leitner and Othman filed a First Amended Petition to correct a drafting error in the prayer clauses of the Petition.

42.     A true, correct, and genuine copy of the First Amended Petition filed in the Underlying Lawsuit is attached as *Exhibit 5*.

43.     The only amendmend in the First Amended Petition is Leitner is now seeking judgment against Home Depot U.S.A., Close, and the Does in an amount in excess of $25,000.00, that will fairly and reasonably compensate her for her injuries, for losses she will sustain in the future, for past and future medical bills, for past and future pain and suffering and restricted body movement, for her costs, and for any other relief the Court deems just and equitable.

*The Policies*

44.     Cincinnati issued to Tradesmithe, Inc. Policy No. ENP 009 52 33, policy period 08-08-2018 (the "Policy").

45.     A certified copy of the Policy (with premium information redacted) is attached as *Exhibit 6*.

46.     The Policy contains the following relevant provisions:

* * *

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE**

**1.     Insuring Agreement**

     **a.**     We will pay those sums that the insured becomes legally liable to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result….

* * *

**2.     Exclusions**

This insurance does not apply to:

      **b.**    **Contractual Liability**

      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (2)    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. When a claim for such "bodily injury" or "property damage" is made, we will defend that claim provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

\* \* \*

**SECTION V – DEFINITIONS**

\* \* \*

**4.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

**12.**    "Insured contract" means:

\* \* \*

      **f.**    That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability to pay for "bodily injury", "property damage" or "personal and advertising injury" to a third person or organization. Tort liability means a liability that would be imposed in the absence of any contract or agreement.

\* \* \*

**16.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

**19.**    "Products-completed operations hazard":

      **a.**    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      **(1)**    Products that are still in your possession; or

      **(2)**    Work that has not yet been completed or abandoned. However, "your

work" will be deemed completed at the earliest of the following times:

**(a)**   When all of the work called for in your contract has been completed; or

**(b)**   When all of the work to be done at the job site has been completed if your contract calls for work at more than one than one job site; or

**(c)**   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

\* \* \*

**21.**   "Suit" means a civil proceeding in which money damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged….

\* \* \*

**26.**   "Your work":

a.   Means:

(1)   Work or operations performed by you or on your behalf; and

(2)   Materials, parts or equipment furnished in connection with such work or operations.

\* \* \*

**B.**   **SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.**   **Insuring Agreement. a.** is amended to include damages which you become legally obligated to pay because of "bodily injury" that is caused by or results from "your work" or "your product" if such "bodily injury" is included within the "products completed operations hazard".

"Bodily injury" for which this Paragraph B. provides coverage shall be deemed to be caused by an "occurrence".

However, we will not pay for "bodily injury" that was a result of willful, wanton or intentional misconduct.

9

C.      With respect to the coverage provided under Paragraphs **A.** and **B.**, this endorsement does not serve to limit or restrict the applicability of any exclusion or limitation under this Coverage Part.

\* \* \*

## INJURY OR DAMAGE TO OR RESULTING FROM YOUR WORK
## AND INJURY OR DAMAGE RESULTING FROM YOUR PRODUCT

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The provisions of this endorsement apply only with respect to "property damage" to or resulting from "your work", "property damage" resulting from "your product", and "bodily injury" resulting from "your work" and "your product". The following coverage is afforded hereunder:

A.      **Additional Insured – Owners, Lessees Or Contractors – Automatic Status For Other Parties When Required in Written Contract Or Agreement With You**

1.   Section II – Who Is An Insured is amended to include as an additional insured any person or organization you have agreed in writing in a contract or agreement to add as an additional insured on this Coverage Part. Such person(s) or organization(s) is an additional insured only with respect to liability for:

a.   "Bodily injury", "property" or "personal and advertising" *caused in whole or in part,* by the performance of your ongoing operations by you or on your behalf, under that written contract or written agreement. Ongoing operations does not apply to "bodily injury" or "property damage" occurring after:

(1)   All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed.

(2)   That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project; and

\* \* \*

47.     Cincinnati issued to Tradesmithe Commercial Umbrella Policy No. ENP 009 52 33, effective date 08-08-2018.

48.     A certified copy of the Umbrella Policy (with premium information redacted)Cin is attached as ***Exhibit 7***.

49.     The Umbrella Policy contains the following relevant provisions:

* * *

## COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

**SECTION I – COVERAGE**

**A.     Insuring Agreement**

**1.**     We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages for "bodily injury," "personal and advertising injury", or "property damage" to which this insurance applies:

**a.**     Which is in excess of the "underlying insurance"; or

**b.**     Which is either excluded or not insured by "underlying insurance".

* * *

**SECTION V – DEFINITIONS**

* * *

25.     "Underlying insurance" means the insurance listed in the Schedule of Underlying Insurance.

* * *

*Tender*

50.     On February 26, 2022, Home Depot's insurer sent a letter to Tradesmithe requesting that Tradesmithe report the incident to Cincinnati and that Tradesmithe defend and indemnify Home Depot USA regarding the claims asserted by Leitner and Othman pertaining to the incident referenced in the First Petition.

51.     On October 4, 2022, Home Depot's insurer sent an email to Cincinnati requesting a status update on the February 26, 2022 "tender".

52.     On October 4, 2022, Cincinnati advised Home Depot's insurer that it had not been able to accept the "tender" because Cincinnati had never been provided a copy of the MSA for review as requested.

53.     On October 12, 2022, Cincinnati sent a letter to Home Depot's insurer requesting a formal tender because suit had been filed.

54.     On October 18, 2022, Home Depot's insurer sent a tender letter to Cincinnati requesting that Cincinnati defendant and indemnify Home Depot USA in the Underlying Lawsuit.

55.     On November 22, 2022, Cincinnati sent a letter to Home Depot USA's insurer, with copies to Tradesmithe, and to counsel for Leitner and Othman, denying Home Depot's request for defense and indemnification in the Underlying Lawsuit.

**COUNT I – DECLARATORY JUDGMENT**
**(Inapplicability of Maintenance Services Agreement)**

56.     Cincinnati restates and incorporates by reference the other paragraphs of this Complaint as if fully set forth herein.

57.     Lutz, not Home Depot USA, hired Tradesmithe to perform work contained in the scope of the Quote and P.O., including power washing the roof of the Store.

58.     Home Depot USA did not issue a Work Order to Tradesmithe to perform the scope of work contained in the P.O.

59.     Tradesmithe was not hired to perform the work contained in the scope of work contained in the P.O. pursuant to a Work Order from Home Depot.

60.     Because Home Depot did not hire Tradesmithe to perform the work contained in the P.O. pursuant to a Work Order from Home Depot, the MSA was not applicable to the work performed by Tradesmithe pursuant to the P.O., including the power washing referenced in the Petition.

61.     Tradesmithe does not owe Home Depot a duty to defend or indemnify pursuant to the indemnification provision contained in the MSA.

62. Cincinnati does not owe Home Depot a duty to defend or indemnify pursuant to the indemnification provision contained in the MSA.

63. To the extent Home Depot is making a claim for defense or indemnification for allegations or claims in the Underlying Lawsuit based on the indemnification provision in the MSA, Home Depot's claims are not covered by the Policies because the indemnification provision in the MSA is not applicable to the allegations or claims in the Underlying Lawsuit.

WHEREFORE, Cincinnati prays for declaratory judgment in its favor and against Home Depot U.S.A., Inc., Lutz Roofing South, Inc., Joe Alexander d/b/a Alexander Construction, Michelle Leitner, Mohamed Othman, and Andrew ("Andy") Close declaring that:

a. The power washing referenced in the Underlying Lawsuit was performed pursuant to the P.O. between Lutz and Tradesmithe;

b. The work power washing referenced in the Underlying Lawsuit was not performed pursuant to a written Work Order from Home Depot to Tradesmithe;

c. The Maintenance Services Agreement is not applicable to Tradesmithe's scope of work contained in the P.O., or the claims and allegations in the Underlying Lawsuit;

d. That Tradesmithe does not owe Home Depot a duty to defend or indemnify Home Depot, Andrew Close, or any other affiliates, employees, servants, agents, or representatives of Home Depot against allegations and claims in the Underlying Lawsuit pursuant to the indemnification provision contained in the Maintenance Services Agreement;

e. That Cincinnati does not owe Home Depot a duty to defend or indemnify Home Depot, Andrew Close, or any other affiliates, employees, servants, agents, or representatives

of Home Depot against allegations and claims in the Underlying Lawsuit pursuant to the indemnification provision contained in the Maintenance Services Agreement;

f.  That Tradesmithe does not owe Home Depot a duty to defend or indemnify Home Depot, Andrew Close, or any other affiliates, employees, servants, agents, or representatives of Home Depot against allegations and claims in the Underlying Lawsuit;

g.  That Cincinnati does not owe Home Depot a duty to defend or indemnify Home Depot, Andrew Close, or any other affiliates, employees, servants, agents, or representatives of Home Depot against allegations and claims in the Underlying Lawsuit;

h.  Any other relief that justice may require.

**COUNT II – DECLARATORY JUDGMENT**
**(Inapplicability of "Additional Insured" Provision of Policies)**

64.  Cincinnati restates and incorporates by reference the other paragraphs of this Complaint as if fully set forth herein.

65.  Under the Policies, an "additional insured [is] any person or organization [Tradesmithe] has agreed in writing in a contract or writing to add as an additional insured…only with respect to liability for…'[b]odily injury', 'property damage' or 'personal and advertising injury' *caused in whole or in part*, by the performance of your ongoing operations by you or on your behalf, under that written contract or written agreement…."

66.  In the MSA, Tradesmithe agreed to add Home Depot as an additional insured.

67.  However, the MSA was not applicable to Tradesmithe's scope of work contained in the P.O.

68.  Tradesmithe did not contract with Home Depot to perform the scope of work contained in the P.O.

14

69.     Because the MSA was not applicable to the scope of work contained in the P.O., Home Depot was not an additional insured as pertains to the scope of work contained in the P.O., including the power washing referenced in the Petition.

WHEREFORE, Cincinnati prays for declaratory judgment in its favor and against Home Depot U.S.A., Inc., Lutz Roofing South, Inc., Joe Alexander d/b/a Alexander Construction, Michelle Leitner, Mohamed Othman, and Andrew ("Andy") Close declaring that:

a.  The power washing referenced in the Underlying Lawsuit was performed pursuant to the P.O. between Lutz and Tradesmithe.

b.  The Maintenance Services Agreement is not applicable to Tradesmithe's scope of work contained in the P.O. or the claims and allegations in the Underlying Lawsuit.

c.  That the additional insured provision of the Maintenance Services Agreement is inapplicable to the scope of work, claims, and allegations in the Underlying Lawsuit because the Maintenance Services Agreement is inapplicable to the Tradesmithe's scope of work contained in the P.O., or the claims and allegations in the Underlying Lawsuit;

d.  That Home Depot is not an additional insured under the Policies as pertains to Tradesmithe's scope of work contained in the P.O., or the claims and allegations in the Underlying Lawsuit;

e.  That Tradesmithe does not owe Home Depot a duty to defend or indemnify Home Depot, Andrew Close, or any other affiliates, employees, servants, agents, or representatives of Home Depot against allegations and claims in the Underlying Lawsuit pursuant to the additional insured provision contained in the Maintenance Services Agreement;

f.  That Cincinnati does not owe Home Depot a duty to defend or indemnify Home Depot, Andrew Close, or any other affiliates, employees, servants, agents, or representatives of Home Depot against allegations and claims in the Underlying Lawsuit pursuant to the additional insured provision contained in the Maintenance Services Agreement;

g.  That Tradesmithe does not owe Home Depot a duty to defend or indemnify Home Depot, Andrew Close, or any other affiliates, employees, servants, agents, or representatives of Home Depot against allegations and claims in the Underlying Lawsuit;

h.  That Cincinnati does not owe Home Depot a duty to defend or indemnify Home Depot, Andrew Close, or any other affiliates, employees, servants, agents, or representatives of Home Depot against allegations and claims in the Underlying Lawsuit;

i.  Any other relief that justice may require.

### COUNT III – DECLARATORY JUDGMENT
### (Invalidity of Purchase Order Indemnification Agreement)

70.     Cincinnati restates and incorporates by reference the other paragraphs of this Complaint as if fully set forth herein.

71.     The P.O. between Lutz and Tradesmithe purports to require Tradesmithe to "assume entire responsibility and liability for any and all damage or injury of any kind or nature (including death) to all persons, whether employee of the subcontractors or otherwise…resulting from, arising out of or occurring in connection with its execution of the Work (subcontract)…."

72.     It is unclear whether this purports to require Tradesmithe to assume liability for damage or injury to "employees of [Tradesmithe] or otherwise," or whether this means that Tradesmithe, "whether employees of [Tradesmithe] or otherwise," assume liability "assume entire

responsibility and liability for any and all damage or injury of any kind or nature (including death) to all persons….”

73.     The indemnification provision contained in the P.O. does not identify the “owner and others identified in the contract documents” whom Tradesmithe is required to defend and indemnify.

74.     The indemnification provision contained in the P.O. does not identify the applicable “contract documents” that identify the “owner and others identified in the contract documents” whom Tradesmithe is required to defend and indemnify, therefore the term “contract documents” is ambiguous.

75.     The indemnification provision contained in the P.O. does not define the term “subcontract” when referring to “execution of the Work,” therefore, the term “subcontract” is ambiguous.

76.     The indemnification provision contained in the P.O. does not define the term “Work,” therefore, the term “Work” is ambiguous.

77.     The indemnification provision contained in the P.O. is ambiguous, invalid, and unenforceable.

WHEREFORE, Cincinnati prays for declaratory judgment in its favor and against Home Depot U.S.A., Inc., Lutz Roofing South, Inc., Joe Alexander d/b/a Alexander Construction, Michelle Leitner, Mohamed Othman, and Andrew (“Andy”) Close declaring that:

a.  The indemnification provision contained in the P.O. is ambiguous, invalid, and unenforceable;

b.  That Tradesmithe does not owe Home Depot a duty to defend or indemnify Lutz Roofing South, Inc., Home Depot, Andrew Close, or any other affiliates, employees, servants,

agents, or representatives of Lutz Roofing South, Inc. or Home Depot against allegations and claims in the Underlying Lawsuit pursuant to the indemnification provision contained in the P.O.;

c.  That Cincinnati does not owe Home Depot a duty to defend or indemnify Lutz Roofing South, Inc., Home Depot, Andrew Close, or any other affiliates, employees, servants, agents, or representatives of Lutz Roofing South, Inc. or Home Depot against allegations and claims in the Underlying Lawsuit pursuant to the indemnification provision contained in the P.O.;

d.  That Tradesmithe does not owe Home Depot a duty to defend or indemnify Home Depot, Andrew Close, or any other affiliates, employees, servants, agents, or representatives of Home Depot against allegations and claims in the Underlying Lawsuit;

e.  That Cincinnati does not owe Home Depot a duty to defend or indemnify Home Depot, Andrew Close, or any other affiliates, employees, servants, agents, or representatives of Home Depot against allegations and claims in the Underlying Lawsuit;

f.  Any other relief that justice may require.

LITCHFIELD CAVO, LLP


By__ /s/ Kelvin J. Fisher_____
Kelvin J. Fisher   #56573
800 E. 101st Terrace, Suite 350
Kansas City, MO 64131
(816) 648-1400
(816) 648-1401 Fax
fisher@litchfieldcavo.com
ATTORNEYS FOR DEFENDANT
DCM MANAGEMENT COMPANY

18